# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1760

_____

Benjamin E. Schreiber,

        Appellant,

    v.

John Ault; Jerry Connolly; Paul
Loeffelholz, Dr.; M. Stool; Jerome
Manternach; William Soupene;
Diann Wilder-Tomlinson, C/O;
Lambert, C/O,

        Appellees.

\*
\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the Northern
\*  District of Iowa.
\*
\*      [PUBLISHED]
\*
\*
\*
\*

_____

Submitted:  February 13, 2002
Filed:  February 20, 2002

_____

Before McMILLIAN, FAGG, and LOKEN, Circuit Judges.

_____

PER CURIAM.

Iowa inmate Benjamin E. Schreiber contends Iowa state prison officials violated his civil rights under 42 U.S.C. § 1983 when they failed to dispose of Schreiber's medical blood samples in a manner consistent with his religious beliefs. Prison nurses routinely draw prisoners' blood for medical tests, and the blood is sent to an outside laboratory for any tests other than a pin-prick blood sugar check. After the laboratory completes its tests, an outside company with whom the prison has

contracted decontaminates the blood before disposing of it. Schreiber, a practicing Jehovah's Witness, believes for religious reasons that after his blood has been tested, it should be poured on to the ground and covered with dust, and thus returned to the earth. Schreiber bases this belief on biblical Old Testament scripture, though his interpretation goes beyond Jehovah's Witness's teachings. In defense of their failure to comply with Schreiber's request, Iowa prison officials express public safety concerns about the spread of disease if blood were to be disposed of in the way Schreiber has requested.

The district court[*] did not commit clear error in concluding Schreiber's religious belief about the disposal of his blood is sincerely held. See Iron Eyes v. Henry, 907 F.2d 810, 812-13 (8th Cir. 1990). Schreiber presents a valid free exercise claim and prison officials may infringe on Schreiber's rights only if their action is reasonably related to a legitimate penological interest. See Turner v. Safley, 482 U.S. 78, 89 (1987). We review the prison officials' action de novo. Iron Eyes, 907 F.2d at 813.

Applying the factors listed by the Supreme Court in Turner, we first conclude there is a valid, rational connection between prison officials' penological concern of not jeopardizing public health and safety and their refusal to dispose of Schreiber's blood by pouring it on the ground and covering it with dust. See id. The magistrate judge reported the prison nursing director's evaluation of Schreiber's request:

> As far as I'm concerned, that would be a breach of everything I believe in as far as universal precautions in protecting myself and the rest of the staff and the general public . . . . [For example, h]epatitis can live in drawn blood for several days. It's possible dogs could pick it up and drag it into the neighbor's house. Birds could stop, fly around, and pick

---

[*]The Honorable Mark W. Bennett, Chief United States District Judge for the Northern District of Iowa.

it up. . . . I don't know of any procedure that's approved by OSHA that says you can do this.

Schreiber v. Connolly, No. C98-0140, slip op. at 14, 15 (N.D. Iowa Jan. 4, 2001). We agree with the magistrate judge that "[i]n today's world, where HIV, hepatitis, and numerous other serious illnesses are transmitted through contact with blood, the State's procedure that delivers excess blood from testing to a third-party contractor is reasonable, and is rationally connected to the legitimate, neutral government interest of protecting the health and safety of prison inmates and employees." Id. at 24.

Second, Schreiber does not contend, and we do not suggest, that there are alternative means to accommodate Schreiber's specific request about the disposal of his blood. See Turner, 482 U.S. at 90. Third, even if prison officials were willing to dispose of Schreiber's blood as he requests, the record makes clear that this practice could jeopardize the health and safety of persons directly involved in the disposal as well as the prison population and the public at large. See id. Finally, because there are no ready alternatives for the prison to accommodate Schreiber's request without jeopardizing the health and safety of others, the prison's regulation is presumed reasonable. See id. at 90-91.

Because the routine decontamination and disposal of Schreiber's blood after medical testing bears a reasonable relationship to prison officials' public health and safety concerns, we affirm the district court and hold Schreiber's civil rights were not violated.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-3-